AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Florida

FILED BY _____ D.C.

JUN 2 5 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

United States of America )
v. )
Maxis Derilus, )   Case No.  19-8243-WM
)
)
)
_____ )
*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___03/8/2019___ in the county of ___Palm Beach___ in the ___Southern___ District of ___Florida___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Sections 841(a)(1) and 846 | did knowingly and intentionally combine, conspire, confederate, and agree with another to distribute a controlled substance, that is, a mixture and substance containing a detectable amount of cocaine base. |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT

☐ Continued on the attached sheet.

_____
*Complainant's signature*

Ian Lancer MacVane, Special Agent DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  06/25/2019

_____
*Judge's signature*

City and state:   West Palm Beach, Florida      William Matthewman, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT**
**SPECIAL AGENT**
**LANCE MACVANE**
**DRUG ENFORCEMENT ADMINISTRATION**

I, Ian Lancer MacVane, being duly sworn, depose and state:

1. I am a Special Agent with DEA and have served in that capacity since March 2009. Prior to my employment with the DEA, I was employed as a Police Officer at the West Palm Beach Police Department in West Palm Beach, Florida, since January 1997. During my career in law enforcement, I have acquired work experience and specialized training in narcotics related investigations, including drug trafficking, clandestine narcotics manufacturing, narcotics importation, narcotics transportation, Title-III intercepts, electronic surveillance, use of telecommunications as a means to facilitate criminal activity and conspiracy to commit narcotic related crimes. During these investigations, I have participated in the execution of search warrants, and debriefed or participated in debriefings of defendants, informants, and witnesses who had personal knowledge regarding narcotics trafficking organizations. The aforementioned investigations resulted in the arrest and prosecution of numerous individuals for narcotics violations under both state and federal law.

2. The information contained in this affidavit is based on my personal knowledge, and information from various sources, including from other law enforcement agents, subpoenas and surveillance. The information set forth in this affidavit is provided solely for the limited purpose of establishing probable cause for the issuance of an arrest warrant and criminal complaint against Maxis DERILUS (hereinafter "DERILUS"). As such, it does not purport to include all of the information known to me about this investigation.

2

3. In or around March 2019, your affiant and other members of law enforcement have been involved in an investigation concerning DERILUS' drug distribution activities. Sometime prior to March 8, 2019, a past-reliable confidential source (CS) working with the Palm Beach County Sheriff's Office (PBSO) informed agents that Carlington GORDON was selling crack cocaine in Palm Beach County. Agents subsequently introduced an undercover PBSO agent (UC) to GORDON. Thereafter, the UC made several purchases of crack cocaine from GORDON.

4. For example, on March 8, 2019, UC purchased crack cocaine from GORDON at GORDON's residence in Lake Worth, Florida. Prior to the transaction, the UC and GORDON agreed by phone that the UC would purchase 1.5 ounces (42 grams) of crack cocaine from GORDON for $1,500.00. During the transaction, the UC handed GORDON $1,500.00 in PBSO and DEA investigative funds of which the serial numbers had been previously recorded. In return, GORDON handed the UC multiple pieces of rock-like substances that later field tested positive for 19.5 grams of cocaine base. After the transaction, the UC called GORDON and informed him that quantity of crack cocaine that GORDON sold to him/her was less than what they agreed to. GORDON told the UC that GORDON's crack cocaine supplier was on his way to GORDON's residence. GORDON invited the UC back to GORDON's residence to rectify the crack cocaine owed to the UC.

5. Later that day, surveillance agents arrived at GORDON's residence and observed a black Acura sedan, Florida Temporary Tag AA04211, parked on the street in front of GORDON's residence. The Acura was not present at that location during the UC's purchase of crack cocaine from GORDON earlier. Agents then observed GORDON exit the passenger side of the Acura and walk to his residence. A few minutes later, GORDON returned from the residence and re-entered the passenger side of the Acura. Shortly thereafter, the UC arrived at GORDON's residence.

2

GORDON then exited the passenger side of the Acura and walked directly to meet the UC on the residential property. During their meet, GORDON handed the UC a clear plastic bag containing several pieces of suspected crack cocaine (approximately 4 grams). GORDON told the UC that the bag contained four grams and that GORDON can get the remaining crack cocaine balance next week. The UC then left the area. GORDON returned to the Acura and re-entered the passenger side. After several minutes, GORDON exited the Acura and walked back toward his residence as the Acura drove away. The UC later field tested the suspected crack cocaine which tested positive for cocaine base.

6. Surveillance agents followed the Acura and maintained visual contact with it as it drove through Lake Worth. Agents observe the Acura make multiple turns and randomly drive through neighborhood streets without making contact with anyone. Based on their training and experience, agents believe the Acura was engaged in extensive counter surveillance maneuvers to determine whether he/she was being followed by the police and to avoid detection by law enforcement. Eventually, agents had a marked police vehicle conduct a motor vehicle stop of the Acura in Boynton Beach, Florida. During the stop, the driver and sole occupant of the vehicle was identified as DERILUS. He was arrested and issued several traffic citations, including for operating a motor vehicle without a drivers' license. A search of DERILUS incident to arrest revealed $950.00 in DERILUS' right front pants pocket, $1,020.00 in DEILUS' left front pants pocket, and $82.00 crumpled up in DERILUS' left back pants pocket.

7. During a subsequent inventory search of the vehicle, law enforcement located several items, including the following: (a) a new clear plastic baggie concealed in the headliner near the sunroof; (b) $750.00 in cash and one suspected Oxycodone pill; (c) two clear plastic baggies containing approximately 3.5 grams of heroin; (d) approximately 1.05 grams of crack

cocaine; (e) multiple heroin gel capsules weighing approximately 12.57 grams; (f) approximately 1.67 grams crack cocaine pieces in a plastic bag; (g) and a suspected Xanax pill (blue) in clear plastic bag. All the heroin and crack cocaine seized from DERILUS' vehicle field tested positive.

8. On March 18, 2019, agents examined the U.S. currency seized from DERILUS' vehicle during the traffic stop. Agents identified through the serial numbers on the currency that the $930 seized from DERILUS' right front pants pocket consisted of PBSO and DEA investigative funds that were used by the UC to purchase crack cocaine from GORDON on March 8, 2019.

9. Based on the foregoing evidence, your affiant respectfully submits that probable cause exists that Maxis DERILUS did knowingly and intentionally combine, conspire, confederate and agree with one another to distribute a mixture and substance containing a detectable amount of cocaine base, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

Ian Lancer MacVane
Special Agent
Drug Enforcement Administration

SWORN TO AND SUBSCRIBED BEFORE
ME THIS 25TH DAY OF JUNE, 2019,
AT WEST PALM BEACH, FLORIDA.

HON. WILLIAM MATTHEWMAN
UNITED STATES MAGISTRATE JUDGE

4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. 19-8243-WM

UNITED STATES OF AMERICA

vs.

MAXIS DERILUS,

    Defendant.
_____/

CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003? _____ Yes __X__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007? _____ Yes __X__ No

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

BY: _____
MARK DISPOTO
ASSISTANT UNITED STATES ATTORNEY
Court Id. No. A5501143
500 South Australian Avenue
West Palm Beach, Florida 33401
Tel: (561) 209-1032